```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :    SEALED
                                       INDICTMENT
           - v. -                 :
                                       20 Cr.
ARTHUR HAYES,                     :
BENJAMIN DELO,
SAMUEL REED, and
GREGORY DWYER,

                                       
           Defendants.            :

- - - - - - - - - - - - - - - - - - - - X
```



## COUNT ONE
### (Violation of the Bank Secrecy Act)

The Grand Jury charges:

### Overview

1. At all times relevant to this Indictment, BitMEX, or the "Bitcoin Mercantile Exchange," has operated as an online trading platform through the website wwww.bitmex.com. BitMEX solicits and accepts orders for trades in, among other things, futures contracts and other derivative products tied to the value of cryptocurrencies including Bitcoin.  BitMEX accepts Bitcoin to margin and guarantee its derivative products, and as of at least in or about March 2017, has offered its customers up to 100 times leverage on certain of its products.

2. Since its launch in November 2014 and continuing up to and including the present, BitMEX has actively sought to, and

has in fact, served thousands of customers located in the United States, even after purportedly withdrawing from the U.S. market in or about September 2015.

3. By engaging in the foregoing activities, BitMEX has at all relevant times been a futures commission merchant ("FCM") required to comply with the Bank Secrecy Act, 31 U.S.C. § 5311, et seq. (the "BSA").

4. From at least in or about September 2015 and continuing up to and including the present, ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, in their respective roles as executives of BitMEX, willfully failed to establish, implement, and maintain an adequate anti-money laundering ("AML") program, including an adequate customer identification program, more commonly referred to as a know your customer ("KYC") program, for BitMEX, in violation of the BSA.

## BSA Requirements

5. The Bank Secrecy Act, as amended by the Patriot Act of 2001, is designed to "prevent, detect, and prosecute international money laundering and the financing of terrorism." 31 U.S.C. § 5311. The BSA imposes reporting, recordkeeping, and controls requirements on covered "financial institutions," which include futures commission merchants that are required to

register as such under the Commodity Exchange Act (the "CEA"). 31 U.S.C. § 5312(c).

6.   The CEA requires an entity to register as an FCM with the United States Commodity and Futures Trading Commission (the "CFTC") if it solicits or accepts orders for commodity futures contracts, swaps, or retail commodity transactions (among other specified products), and in or in connection with such activity accepts any money or property to margin, guarantee, or secure any trades or contracts that result or may result therefrom. Bitcoin and other virtual currencies are "commodities" under the CEA.

7.   Under the BSA, an FCM must establish an AML program that is approved by senior management and that includes, at a minimum: "policies, procedures, and internal controls reasonably designed to prevent the financial institution from being used for money laundering or the financing of terrorist activities"; independent compliance testing; ongoing training for appropriate personnel; and "risk-based procedures for conducting ongoing customer due diligence." See 31 U.S.C. § 5318(h)(1); 31 C.F.R. § 1026.210. FCMs must also file suspicious activity reports ("SARs") including for transactions involving funds or other assets of at least $5,000 if the FCM knows, suspects, or has

3

reason to suspect, among other things, that the transaction involves funds derived from illegal activity or that the FCM is being used to facilitate criminal activity. See 31 C.F.R. § 1026.320.

8. As part of its AML program, an FCM must implement a written KYC program that includes "risk-based procedures for verifying the identity of each customer to the extent reasonable and practicable." This KYC program must enable an FCM to "form a reasonable belief that it knows the true identity of each customer." At a minimum, an FCM must collect the name, date of birth, address, and government identification number of each customer prior to account opening, and must take steps to verify that information in a reasonable time. The KYC program must also include procedures for "determining whether a customer appears on any list of known or suspected terrorists or terrorist organizations issued by any Federal government agency." See 31 U.S.C. § 5318(l); 31 C.F.R. § 1026.220.

### The Defendants' Roles at BitMEX

9. ARTHUR HAYES, BENJAMIN DELO, and SAMUEL REED, the defendants ("the Founders"), are the co-founders of BitMEX. The Founders founded BitMEX in or about January 2014. BitMEX began to support live trading in or about November 2014.

4

10. BitMEX has at all relevant times been owned and operated by and through one or more parent companies (collectively with BitMEX, the "Company") registered in the Seychelles. The Company also has subsidiaries and affiliates registered in the United States and elsewhere that conduct BitMEX operations and employ staff involved in BitMEX's operations. From its founding to the present, the Company has never had a physical presence in the Seychelles.

11. From the founding of the Company continuing up to and including at least in or about July 2019, the Founders were co-owners of the Company and collectively held an approximately 90% ownership share in the Company.

12. The Founders have at all relevant times controlled the Company. ARTHUR HAYES, the defendant, has been, at all relevant times, the Chief Executive Officer of the Company. BENJAMIN DELO, the defendant, was, from at least March 2015 until at least January 2018, the Chief Operating Officer of the Company, and was the Chief Strategy Officer of the Company from at least September 2018 until May 2019. SAMUEL REED, the defendant, has been, at all relevant times, the Chief Technology Officer of the Company. GREGORY DWYER, the defendant, is a longtime friend and former colleague of ARTHUR HAYES, the defendant. DWYER was

5

hired by the Company as its first non-Founder employee in or about late 2015. DWYER has served a variety of functions at the Company including the Head of Business Development.

## The Company

13. From in or about November 2014 and continuing up to and including at least in or about September 2020, BitMEX has offered and allowed its customers to trade "Bitcoin futures," the value of which are derived by reference to the Bitcoin/U.S. dollar exchange rate as published on a third-party cryptocurrency exchange. At various times since its launch in or about November 2014, BitMEX expanded its product offering to include additional futures contracts based on cryptocurrencies other than Bitcoin and/or the U.S. dollar.

14. From in or about May 2016 and continuing up to and including at least in or about September 2020, BitMEX has also offered and allowed its customers to trade a "Bitcoin perpetual swap," the value of which is derived by reference to the Bitcoin/U.S. dollar exchange rate as published on a third-party cryptocurrency exchange.

15. From in or about November 2014 and continuing up to and including at least in or about September 2020, BitMEX has accepted Bitcoin to margin customer trades. In or about 2015,

BitMEX offered up to 50 times leverage on certain of its products. Since at least in or about March 2017, BitMEX has offered up to 100 times leverage on certain of its products. At all relevant times, margin on BitMEX has been denominated in Bitcoin.

16. From in or about November 2014 and continuing up to and including at least in or about September 2020, BitMEX has accepted Bitcoin to guarantee customer trades. Specifically, BitMEX operates an "Insurance Fund" that it uses to guarantee the shortfall in the event that one counter-party to a trade on BitMEX goes into bankruptcy. BitMEX pays for its Insurance Fund by charging its customers a fee on the value of positions that remain open at the end of each eight-hour trading window. Because BitMEX transacts with its customers solely in Bitcoin, this fee to guarantee trade settlement is collected in Bitcoin.

17. From in or about November 2014 and continuing up to and including at least in or about September 2020, BitMEX has solicited and accepted offers on its cryptocurrency futures and swaps from customers located in the United States, including individual retail customers. As of in or about September 2018, for example, internal BitMEX records reflected thousands of BitMEX accounts with United States location information that

7

were enabled for trading.

18. Because BitMEX is a derivatives exchange that offers and sells commodity futures and swaps to retail and non-retail customers in the U.S, and in connection with such offers and sales accepted property to margin, guarantee, and secure those trades and contracts, it was required to register with the CFTC as an FCM. At no point has BitMEX registered with the CFTC as an FCM.

19. From at least in or about 2017 through in or about early 2019, BitMEX personnel, including GREGORY DWYER and others, conducted BitMEX operations from an office in Manhattan, New York, including but not limited to customer support, business development, and marketing, involving customers located in the United States and elsewhere.

**The Defendants Deliberately Failed to Implement BSA-Compliant AML and KYC Programs at BitMEX**

20. ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, in their respective roles as executives of BitMEX, each willfully caused, aided, abetted, and conspired to commit violations of the BSA at BitMEX.

21. At all times relevant to this Indictment, ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the

defendants, have intended for BitMEX to solicit and accept customers in the United States, and otherwise operate there, without complying with U.S. AML and KYC requirements. By at least in or about September 2015, the defendants understood that such AML and KYC requirements would in fact apply to BitMEX if it served U.S. customers or operated within the United States. The defendants thus took affirmative steps purportedly designed to exempt BitMEX from the application of U.S. laws like AML and KYC requirements. For example, the defendants caused the Company to formally incorporate in the Seychelles, a jurisdiction they believed had less stringent regulation, and from which they could still serve U.S. customers and operate within the United States without performing AML and KYC. Indeed, HAYES, the defendant, bragged in or about July 2019 that the Seychelles was a more friendly jurisdiction for BitMEX because it cost less to bribe Seychellois authorities – just "a coconut" – than it would cost to bribe regulators in the United States and elsewhere.

22. Those affirmative steps purportedly designed to exempt BitMEX from the application of U.S. law demonstrate that from in or about September 2015 and continuing up to and including at least in or about September 2020, ARTHUR HAYES, BENJAMIN DELO,

9

SAMUEL REED, and GREGORY DWYER, the defendants, willfully caused BitMEX to reject adoption or implementation of BSA-compliant AML and KYC programs. For instance, the defendants caused BitMEX to reject adoption or implementation of formal policies, procedures, and internal controls for AML; independent compliance testing for AML; and training for appropriate personnel in AML. Because BitMEX has at no relevant time had an adequate KYC program, BitMEX could not and did not monitor its customer transactions for money laundering and sanctions violations. From its launch in or about November 2014 and continuing up to and including at least in or about September 2020, BitMEX did not file any SARs reporting suspected illegal activity on BitMEX.

23. The defendants also caused BitMEX to allow customers, including individual retail customers, to register and trade without providing sufficient identifying information or documents to allow BitMEX to form a reasonable belief that it knows the true identity of its customers. Prior to in or about August 2020, customers could register to trade on BitMEX anonymously, by providing only a verified email address and without providing any identifying information or documentation. Indeed, in its initial marketing period in 2015, BitMEX's

website expressly advertised that "No real-name or other advanced verification is required on BitMEX."

24. As a result of its failure to implement AML and KYC programs, BitMEX made itself available as a vehicle for money laundering and sanctions violations. For example, in or about May 2018, ARTHUR HAYES, the defendant, was notified of claims that BitMEX was being used to launder the proceeds of a cryptocurrency hack. BitMEX did not implement a formal AML policy in response to this notification. Further, internal BitMEX reports identified that customers located in Iran, who are subject to U.S. sanctions, traded on the platform from at least in or about November 2017 through at least in or about April 2018. HAYES and BENJAMIN DELO, the defendant, personally communicated with BitMEX customers who self-identified as Iranian. BitMEX did not implement a formal AML policy in response to this Iranian customer activity.

25. From in or about September 2015, when the CFTC issued public enforcement orders clarifying that cryptocurrencies are commodities for purposes of the CEA, and continuing up to and including at least in or about September 2020, each of the defendants knew that BitMEX could not serve U.S. customers without complying with U.S. AML and KYC requirements, that

11

BitMEX did not have adequate AML and KYC programs, and that BitMEX in fact continued to serve customers in the United States. Each of the defendants willfully caused BitMEX's failure fail to adopt or implement adequate AML and KYC programs, or aided and abetted that failure. Each of the defendants has at relevant times actively encouraged or allowed BitMEX to be accessed and used by U.S. customers, and failed to take steps to effectively restrict U.S. customers from accessing BitMEX, as described below.

26. For instance, ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, knew that specific customers, residing in the United States, continued to access BitMEX's platform into in or about 2018, with the knowledge of HAYES, DELO, REED, and DWYER, each of whom failed to take steps to deactivate the accounts of these U.S. customers. DELO and DWYER knowingly allowed one of these customers to access BitMEX using a non-U.S. passport in the name of a third party that did not belong to this customer. DELO also allowed another customer to continue to access a BitMEX trading account despite this customer being "US based," because "[h]e's famous in Bitcoin," and falsely changed this customer's internal country of residence to a country other than the United States. REED

12

allowed a friend of his who he knew resided in the United States to continue to access BitMEX's platform up to and including at least in or about October 2018.

27.  ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, had access to internal BitMEX reports, which tracked and reported trading revenue by country monthly. Each and every report from in or about November 2017 through in or about July 2018 showed U.S. customers trading on BitMEX's platform.  In a deposition before the CFTC in or about January 2019, REED falsely denied knowing that BitMEX maintained reports identifying U.S. customers on the platform. In truth and in fact, in or about December 2018, REED received a report dated in or about October 2018 which showed trading revenue attributable to U.S. customers.

28.  After in or about September 2015, when the CFTC issued the public enforcement orders clarifying that cryptocurrencies are commodities for purposes of the CEA, BitMEX announced that it was withdrawing from the U.S. market.  BitMEX implemented an internet protocol ("IP") address check (the "IP Address Check") purportedly designed to identify and block customers located in the United States from trading on BitMEX.  But as the defendants well knew, and as the defendants intended, BitMEX applied the IP

13

Address Check on just a single occasion for each customer. As a result, if a customer showed a non-U.S. IP Address for the IP Address Check, that customer could thereafter access and trade on BitMEX's platform from U.S. IP Addresses. The defendants also caused BitMEX to further undermine the effectiveness of the IP Address Check, by among other methods, providing an anonymous means of accessing the platform, through the Tor network, a special Internet network that makes it practically impossible to physically locate the computers hosting or accessing websites on the network. The defendants also caused BitMEX to take no steps to restrict access of BitMEX via virtual private network ("VPN") services, which the defendants knew allowed U.S. customers to circumvent the IP Address Check by making it appear as though they were accessing BitMEX from outside the United States. The defendants also caused BitMEX to implement a policy through at least in or about September or October 2018 which exempted U.S. IP addresses – and only U.S. IP addresses – from an internal term of service rule which putatively blocked BitMEX access from IP addresses in certain restricted jurisdictions.

29. BitMEX also engaged in marketing activities with the effect and intent of attracting U.S. customers. ARTHUR HAYES and GREGORY DWYER, the defendants, regularly attended

14

cryptocurrency conferences in New York and elsewhere in the United States, and had meetings in the United States with potential and existing customers based in the U.S. In or about May 2018, BitMEX rented three Lamborghinis and had them parked outside of the Consensus Bitcoin conference in Manhattan. ARTHUR HAYES, the defendant, declared this "stunt" a success based on the coverage from U.S. news media. And in or about 2018, ARTHUR HAYES, the defendant, made repeated appearances on U.S. television shows with viewership primarily in the United States during which he promoted BitMEX.

### Statutory Allegations

30. From at least in or about September 2015, up to and including in or about September 2020, in the Southern District of New York and elsewhere, ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, did willfully cause a financial institution to violate the Bank Secrecy Act by failing to establish, implement, and maintain an anti-money laundering program that satisfies the minimum standards required by 31 U.S.C. §§ 5318 and 5322, and 31 C.F.R. §§ 1026.210 and 1026.220, to wit, the defendants caused BitMEX, a futures commission merchant with U.S. customers, to fail to establish and implement an anti-money laundering program that includes policies,

15

procedures, and internal controls reasonably designed to prevent BitMEX from being used for money laundering or terrorist financing; independent compliance testing; ongoing training for appropriate personnel; and risk-based procedures for verifying the identity of each BitMEX customer to the extent reasonable and practicable.

(Title 31, United States Code, Sections 5318(h)(1) and (l), 5322(a) and (c); Title 31, Code of Federal Regulations, Sections 1026.210 and 1026.220; and Title 18, United States Code, Section 2.)

## COUNT TWO
### (Conspiracy to Violate the Bank Secrecy Act)

The Grand Jury further charges:

31. The allegations contained in paragraphs 1 through 29 of this Indictment are repeated and realleged as if set forth fully herein.

32. From at least in or about September 2015, up to and including at least in or about September 2020, in the Southern District of New York and elsewhere, ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, and with others known and unknown, to cause a financial institution to violate the Bank Secrecy Act, in violation of 31 U.S.C. §§ 5318 and 5322, and 31 C.F.R. §§

1026.210 and 1026.220, to wit, the defendants caused BitMEX, a futures commission merchant with U.S. customers, to fail to establish and implement an anti-money laundering program that includes policies, procedures, and internal controls reasonably designed to prevent BitMEX from being used for money laundering or terrorist financing; independent compliance testing; ongoing training for appropriate personnel; and risk-based procedures for verifying the identity of each BitMEX customer to the extent reasonable and practicable.

### Overt Acts

33. In furtherance of the conspiracy, and to effect the illegal objects thereof, ARTHUR HAYES, BENJAMIN DELO, SAMUEL REED, and GREGORY DWYER, the defendants, together with others known and unknown, committed the following overt acts, in the Southern District of New York and elsewhere:

  a. From at least in or about 2017 through in or about early 2019, BitMEX personnel, including DWYER and others, conducted BitMEX operations from an office in Manhattan, New York, including but not limited to customer support, business development, and marketing, involving customers located in the United States and elsewhere.

  b. From at least in or about September 2015 through at

least in or about October 2019, HAYES, DELO, REED, and DWYER allowed particular known customers who resided in the United States to obtain or maintain access to BitMEX in violation of its purported U.S. user ban, and DELO and DWYER and others known and unknown falsified or allowed to be falsified internal BitMEX records claiming that these customers resided outside of the United States.

      c.    In or about May 2018, HAYES was notified of claims that BitMEX was being used to launder the proceeds of a cryptocurrency hack. Neither HAYES nor any other BitMEX employee took any action to implement a formal AML policy in response.

      (Title 18, United States Code, Section 371.)

_____
FOREPERSON

_____
AUDREY STRAUSS
Acting United States Attorney

18

Form No. USA-33s-274 (Ed. 9-25-58)

---
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---

UNITED STATES OF AMERICA

- v. -

ARTHUR HAYES,
BENJAMIN DELO,
SAMUEL REED, and
GREGORY DWYER,

Defendants.

---

SEALED INDICTMENT

20 Cr.

(31 U.S.C. §§ 5318(h)(1) and (l),
5322(a) and (c); 31 C.F.R. §§ 1026.210
and 1026.220; and 18 U.S.C. §§ 2 and
371.)

AUDREY STRAUSS
Acting United States Attorney.

**A TRUE BILL**

Foreperson.